**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Case No. 08-cv-01784-REB-CBS

EMPLOYERS MUTUAL CASUALTY COMPANY,

Plaintiff,

v.

ACCENT' WINDOWS, INC.,
TIMOTHY J. MARCOVICH,
SHERRY M. MARCOVICH,
TERRY G. MARCOVICH, and
TRACY LYNN MARCOVICH,

Defendants.

---

**ORDER CONCERNING MOTIONS FOR SUMMARY JUDGMENT**

---

**Blackburn, J.**

This matter is before me on the following motions: (1) **Defendant Employers Mutual Casualty Company's Motion and Memorandum in Support of Summary Judgment** [#24][1] filed March 6, 2009; (2) **Counterclaimant Accent Windows, Inc. Cross Motion for Summary Judgment** [#35] filed April 14, 2009; and (3) **Counterclaimant Marcovichs Cross Motion for Summary Judgment** [#37] filed April 15, 2009. In their motion [#37], the Marcovich defendants simply adopt the arguments asserted by Accent Windows in Accent's motion for summary judgment [#35]. These motions have engendered responses [#39 & 40] and replies [#41 & 42]. I deny the motion filed by Employers Mutual Casualty Company and I grant in part and deny in

---

1 "[#24]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

part the motions of Accent Windows, Inc., and the Marcovich defendants.

## I. JURISDICTION & CONTROLLING LAW

I have jurisdiction over this case under 28 U.S.C. § 1332 (diversity). The plaintiff asserts claims under the law of the state of Colorado, and the defendant's counterclaim is asserted also under the law of the state of Colorado. Colorado law controls the resolution of the substantive issues in this diversity case. ***Erie Railroad Co. v. Tompkins***, 304 U.S. 64, 78 (1938); ***Royal Maccabees Life Insurance Co. v. Choren***, 393 F.3d 1175, 1180 (10th Cir. 2005). Federal law controls procedural issues. ***See, e.g., Sims v. Great American Life Ins. Co.***, 469 F.3d 870, 877 (10th Cir. 2006).

## II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. ***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); ***Farthing v. City of Shawnee***, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not

proper. ***Concrete Works***, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. ***Rice v. United States***, 166 F.3d 1088, 1092 (10th Cir.), ***cert. denied***, 120 S.Ct. 334 (1999); ***Nutting v. RAM Southwest, Inc.***, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

## III. FACTS

This statement of facts is drawn from the briefs filed by the parties and the exhibits cited by the parties. The parties' filings indicate that there is no genuine issue of material fact related to the issues addressed in the motions for summary judgment. The parties agree on the relevant sequence of events and on the content of the relevant documents.

This case concerns an insurance coverage dispute. Defendant Accent Windows, Inc., purchased commercial general liability and umbrella insurance policies from plaintiff Employers Mutual Casualty Company (EMC). The general liability policies covered annual periods beginning January 1, 2001, and ending January 1, 2009, and the umbrella policies covered annual periods from January 8, 2002, through January 1, 2009. Defendants Tim Marcovich and Sherry Marcovich are also named insureds on the policies. Further, the policies provide coverage to defendants Terry and Tracy Marcovich with respect to their liability as stockholders of Accent Windows, Inc.

Richard Roeding was a shareholder and employee of Accent for several years. Roeding has filed a lawsuit in state court against Accent and the four Marcovich

defendants. In this case, EMC seeks a declaration that it does not owe to Accent or to the Marcovich defendants a duty to defend in the underlying Roeding action and that it does not owe to Accent or to the Marcovich defendants a duty to indemnify on any of the claims asserted in the Roeding action. Employers Mutual seeks also an award of damages as reimbursement for fees and expenses expended by EMC in defense of the Roeding action. Accent and the Marcovich defendants assert a counterclaim against EMC, seeking a declaration that the EMC policies create a duty to defend on which EMC is obligated. All parties seek summary judgment on their claims.

The key coverage provision of the policies concerns personal and advertising injury. The commercial general liability policy defines "personal and advertising injury," in relevant part, as

> injury . . . arising out of . . . Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

*EMC's motion for summary judgment*, Exhibit R, ¶ 14. The commercial umbrella policy also provides coverage for personal and advertising injury. This coverage includes

> unintentional infliction of mental anguish, mental injury, including fright, shock, and humiliation not considered illegal and/or a violation of unfair trade practices acts.

*EMC's motion for summary judgment*, Exhibit V, ¶ 15-F.

Of course, the policies have limitations and exclusions. EMC notes that the policies exclude coverage for personal and advertising injury

> (c)aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.

*EMC's motion for summary judgment*, Exhibit X. The policies also exclude coverage for injuries

> (a)rising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

*Id.* Finally, the policies exclude coverage for personal and advertising injury arising out of any

> (e)mployment related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person.

*EMC's motion for summary judgment*, Exhibit W. The parties do not cite a definition of the term "employment related practices" in the policies.

The complaint filed by Roeding in state court alleges eight claims for relief against the defendants. *EMC's motion for summary judgment*, Exhibit P (Roeding Complaint). These claims include (1) fraud; (2) negligent misrepresentation; (3) breach of duty by directors and shareholders; (4) breach of express contracts; (5) promissory estoppel; (6) tortious interference with prospective business advantage; (7) declaratory judgment - voting shares; and (8) declaratory judgment - disguised distributions. Again, the defendants in the Roeding Complaint also are the defendants in the above-captioned case. Much of the Roeding Compliant details allegations that Timothy and Sherry Marcovich sought to have Roeding continue to operate and improve Accent's business so Timothy and Sherry Marcovich could continue to take disguised distributions from the business for their own benefit. Roeding alleges further that Timothy and Sherry Marcovich agreed to turn ownership and operation of Accent over to their son, Terry Marcovich, and Roeding, including the transfer of a 66 percent interest in Accent to Terry Marcovich and Roeding in equal shares. Roeding alleges that Timothy and Sherry Marcovich never intended to transfer this interest in Accent to Roeding, and defrauded Roeding by inducing him to act on the representation that this

interest would be transferred to Roeding.

Roeding's employment with Accent was terminated on March 27, 2007. After his termination, Roeding started another company. Both Accent and Roeding's new company are in the business of selling windows. Roeding alleges that Accent and the Marcovich defendants "began a campaign to publically defame Plaintiff Roeding by claiming that he had committed theft and fraud against the Defendants." Roeding Complaint ¶ 77. Roeding alleges further that the defendants "began making public defamatory statements about Plaintiff Roeding, stating that he was responsible for the company's financial troubles and that because Accent was required to repurchase his (Roeding's) stock, the company did not have funds to pay its employees or vendors. *Id*., ¶ 78. In addition, Roeding alleges that the defendants have told "Roeding's customers that Plaintiff Roeding's company cannot install windows or doors properly or will not install windows or doors and instead plans to defraud them." *Id*.

In its motion for summary judgment, Accent relies on Roeding's sixth claim for relief, his claim for tortious interference with prospective business advantage, as triggering EMC's duty to defend against Roeding's claims. Relying on his general factual allegations, Roeding alleges in his sixth claim for relief that

> 144. Plaintiff Roeding's new company competes with Accent in the field of window and door installation, and otherwise.
>
> 145. The Defendant and/or Defendants' agents and employees have defamed Plaintiff Roeding and his new company.
>
> 146. Defendants by words or conduct, or both, intentionally, willfully or wantonly, and/or negligently interfered with Plaintiff Roeding's prospective business advantages.
>
> 147. Defendants' interference was intentional, willful or wanton, and/or negligent and improper.

> 148. Defendants' interference with the agreements and/or contracts caused the Plaintiff to suffer damages, special and consequential damages, mental anguish and losses.

*Roeding Complaint*, ¶ ¶ 144 - 148.

EMC brings its claims under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 - 2202. EMC seeks a declaratory judgment construing the EMC policies in relation to the claims asserted in the Roeding Complaint. In its complaint, EMC seeks a judgment declaring (1) that it owes not duty to defend the defendants, or any of them, on any claim asserted in the Roeding Complaint; (2) that it owes no duty to indemnify the defendants, or any of them, on any claim asserted in the Roeding Complaint; (3) that even if EMC owes a duty to indemnify the defendants on certain claims in the Roeding Complaint, some of the claims in the Roeding Complaint fall outside the scope of coverage provided in the EMC policies; and (4) that an award of money damages as reimbursement for fees and expenses expended by EMC in defense of the claims in the Roeding Complaint. In their counterclaim, the defendants seek a declaration that the EMC policies provide coverage for the claims asserted in the Roeding Complaint.

## III. INSURER'S DUTY TO DEFEND

In its first claim for relief, EMC seeks a declaration that it has no duty to defend the defendants against the claims asserted in the Roeding Complaint. In the context of a dispute about an insurer's duty to defend against a claim asserted against its insured, Colorado applies a standard labeled by the parties as the "eight corners rule." The allegations of the relevant complaint, here the Roeding Complaint, together with the language of the relevant insurance policies provide the sole bases for evaluating whether an insurer has a duty to defend. ***Lopez v. American Family Mut. Ins. Co.***, 148 P.2d 438, 439 (Colo.App. 2006); ***Cotter v. American Empire Sur. Lines, Ins. Co.***,

90 P.3d 814 (Colo. 2004). An insurer's duty to defend arises when the complaint against the insured "alleges any facts that might fall within the coverage of the policy." ***Hecla Mining Co. v. New Hampshire Insurance Co.***, 811 P.2d 1083, 1089 (Colo. 1991).

> The actual liability of the insured to the claimant is not the criterion which places upon the insurance company the obligation to defend. Rather, the obligation to defend arises from allegations in the complaint, which if sustained, would impose a liability covered by the policy. Where the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim.

***Id***. (internal quotations, citations, and footnotes omitted).

"When all of the elements of a claim covered by a policy are alleged, an insurer has a duty to defend its insured, even if a claim is not labeled according to the terms used in an insurance policy. ***Thompson v. Maryland Casualty Co***., 84 P.3d 496, 502 (Colo. 2004). Stated differently, an "insurer has a duty to defend unless the insurer can establish that the allegations in the complaint are solely and entirely within the exclusions in the insurance policy." ***Hecla***, 811 P.2d at 1090. If the underlying complaint includes more than one claim, then a duty to defend against all claims asserted arises if any one of the claims arguably is a risk covered by the relevant insurance policy. ***Horace Mann Insurance Co. v. Peters***, 984 P.2d 80, 85 (Colo.App. 1998) (citing ***Hecla Mining Co. v. New Hampshire Insurance Co.***, 811 P.2d 1083 (Colo. 1991)).

EMC argues that the sixth claim for relief in the Roeding Complaint does not include factual allegations that support a claim for negligent injury. Absent such a claim, EMC asserts, the Roeding Complaint does not include a claim which, if sustained,

would impose a liability covered by the EMC policies. EMC acknowledges that negligence is one of the alternative allegations asserted in the sixth claim for relief in the Roeding Complaint. However, EMC argues that the specific facts described in the Roeding Complaint can support only claims for intentional infliction of harm by the defendants and are inconsistent with any claim for negligent infliction of harm asserted by Roeding. EMC notes that the Roeding Complaint frequently recites allegations of a campaign to publically defame Roeding and intentional communication of false information with the intent of ruining Roeding's reputation and his new business.

In support of its position, EMC cites ***West American Insurance Co. v. Maestas***, 631 F.Supp 1565 (D. Colo. 1986) and ***Fire Ins. Exch. v. Bentley***, 953 P.2d 1297 (Colo. App. 1998). In ***Maestas***, the court concluded that defendant insured's alleged action of biting off the plaintiff's nose and both of his ears was inherently inconsistent with the plaintiff's allegation of negligent action by the insured. ***Maestas***, 631 F. Supp. at 1566. "(T)hree bites do not a negligence case make." ***Id***. In these factual circumstances, the court concluded, the relevant insurance policy's coverage for negligence could not possibly be applicable, and the exclusion of coverage for conduct "expected or intended by the insured" was applicable. ***Id***. Despite the allegation of negligence in the underlying complaint, the specific factual allegations were inconsistent with negligence, thus, bringing the claim within the exclusion provision of the insurance policy.

In ***Fire Ins. Exch. v. Bentley***, the plaintiff in the underlying action sued an individual covered by a homeowners insurance policy asserting, *inter alia*, a claim for negligence. 953 P.2d 11297, 1302. The insured was alleged to have tape-recorded a sexual encounter with the plaintiff without her consent and to have played the tape

recording to undisclosed third parties. ***Id***. at 1299. The ***Bentley*** court concluded that although the underlying "complaint is expressed in terms of negligence, it alleges only intentional conduct." ***Id***. Because the specific factual allegations of the underlying complaint were inconsistent with negligence, the court concluded that the underlying claim was fully within the intentional conduct exclusion of the insurance policy. ***Id***.

I find and conclude that the allegations in the Roeding Complaint differ significantly from the allegations in the complaints at issue in ***Maestas*** and ***Bentley***. Unlike the complaints in ***Maestas*** and ***Bentley***, the Roeding Complaint contains allegations describing a long series of varied actions by the defendants. Most of the defendants' alleged actions are described as intentional. However, some of the statements allegedly made by the defendants readily could fall within the realm of negligence and not intentionality. For example, it is readily conceivable that the alleged statements concerning Roeding's responsibility for Accent's financial troubles, Roeding's new company's alleged inability to install windows and doors properly, or Roeding's purported inability to pay his bills, all were made with a negligent disregard for their truth or falsity. Unlike ***Maestas*** and ***Bentely***, these factual allegations are not inherently inconsistent with a claim of negligence. Rather, these factual allegations are consistent with a claim of negligence, which is covered under the relevant policies, and with claims of knowing and intentional conduct, which are not covered.

I find and conclude also that the allegations in the sixth claim for relief in the Roeding Complaint do not fall within the employment related practices exclusion of the policies. At minimum, the alleged statements concerning Roeding's new company's alleged inability to install windows and doors properly, or Roeding's purported inability to pay his bills, do not relate to Roeding's former employment with Accent. Rather, these

allegations relate only to Roeding's new enterprise, which he started after his employment with Accent had ended. These alleged statements are not employment related practices under any ordinary interpretation of that term.

In short, the Roeding Complaint alleges some facts and claims that might fall within the coverage of the relevant insurance policies. Therefore, EMC's has a duty to defend the defendants against Roeding's claims. EMC's motion for summary judgment on its first claim for relief should be denied. To the extent the defendants seek in their counterclaim a declaration that EMC has a duty to defend the defendants against the claims asserted in the Roeding Complaint, the defendants' motions for summary judgment should be granted.

## IV. INSURER'S DUTY TO INDEMNIFY

EMC seeks summary judgment on its second claim for relief, in which it seeks a declaration that it has no duty to indemnify the defendants on any of the claims asserted in the Roeding Complaint. EMC seeks also summary judgment on its third claim for relief, in which it seeks a declaration that it has no duty to indemnify the defendants on certain of the claims in the Roeding Complaint. If EMC had no duty to defend against the claims in the Roeding Complaint, then, by definition, EMC would have no duty to indemnify the defendants on those claims. In their counterclaim, the defendants seek a declaration that the EMC policies provide coverage for all of the claims asserted in the Roeding Complaint. Thus, the defendants seek summary judgment on their counterclaim.

As discussed above, EMC has a duty to defend against the claims in the Roeding Complaint. Whether any of those claims have been or will be resolved in a manner that falls within the coverages provided by the EMC policies is a question about

which the current record contains no evidence. Therefore, EMC is not now entitled to summary judgment on its claim that it has no duty to indemnify the defendants on any of the claims in the Roeding Complaint or on its claim that it has not duty to indemnify on certain of the claims in the Roeding Complaint. Similarly, the defendants are not now entitled to summary judgment on their counterclaim seeking a declaration that the EMC policies cover the claims asserted in the Roeding Complaint. The undisputed facts in the record do not include the material facts necessary to resolve these claims and counterclaim. Thus the parties' motions for summary judgment should be denied to the extent the parties seek a declaration defining the scope of EMC's duty to indemnify.

## V. REIMBURSEMENT OF EMC

The conclusion that EMC has a duty to defend necessarily defeats EMC's claim for reimbursement of costs and fees expended in defending against the Roeding Complaint. The only basis for EMC's claim for reimbursement is EMC's assertion that it has no duty to defend its insureds against the claims in the Roeding Complaint. EMC has a duty to defend against those claims and, thus, is not entitled to reimbursement of the costs and fees it has expended in fulfilling its duty to defend. The undisputed facts in the record demonstrate that EMC is not entitled to reimbursement of costs and fees expended in defending against the Roeding Complaint. On this claim, EMC's motion for summary judgment should be denied.

## VI. CONCLUSION & ORDERS

The facts relevant to the pending motions for summary judgment concerning EMC's duty to defend, the relevant terms of the applicable insurance policies, and the content of the Roeding Complaint are not disputed. Under the eight corners rule, the contents of these documents constitute the only sources of relevant facts. The

undisputed facts in the record demonstrate that some of the allegations made in the Roeding Complaint, and in the sixth claim for relief in that complaint, include allegations that might fall within the coverages provided in the relevant insurance policies. EMC has not demonstrated that the allegations in the Roeding Complaint are solely and entirely within the asserted exclusions in the insurance policies. EMC has a duty to defend the defendants against the claims asserted in the Roeding Complaint. Accordingly, EMC's motion for summary judgment on its First Claim for Relief will be denied. The defendants' motions for summary judgment will be granted to the extent that the defendants are entitled to a declaration that EMC has a duty to defend the defendants against the claims asserted in the Roeding Complaint.

The undisputed facts in the record are not sufficient to resolve EMC's second and third claims for relief, which are claims seeking a declaration that it is not obligated to indemnify the defendants on any of the claims asserted in the Roeding Complaint or it is not obligated to indemnify the defendants on certain of the claims asserted in the Roeding Complaint. Thus, EMC's motion for summary judgment on its second and third claims for relief will be denied.

Because the undisputed facts in the record demonstrate that EMC has a duty to defend, EMC is not entitled to reimbursement of costs and fees expended in fulfilling that duty. EMC's motion for summary judgment on its fourth claim for relief will be denied.

Finally, the undisputed facts in the record demonstrate that the defendants are entitled to judgment as a matter of law on their claim seeking a declaration that EMC has a duty to defend the defendants against the claims asserted in the Roeding Complaint. To this extent, the defendants' motions for summary judgment will be

granted. However, the undisputed facts in the record do not demonstrate that the defendants are entitled to a declaration that EMC has a duty to indemnify the defendants on all of the claims in the Roeding Complaint, should be defendants be found to be liable on one or more of those claims. To the extent the defendants seek such a declaration, their motions for summary judgment will be denied.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant Employers Mutual Casualty Company's Motion and Memorandum in Support of Summary Judgment** [#24] filed March 6, 2009, is **DENIED**;

2. That **Counterclaimant Accent Windows, Inc. Cross Motion for Summary Judgment** [#35] filed April 14, 2009, is **GRANTED** in part;

3. That **Counterclaimant Marcovichs Cross Motion for Summary Judgment** [#37] filed April 15, 2009, is **GRANTED** in part;

4. That under 28 U.S.C. § 2201, the court **DECLARES** that the plaintiff, Employers Mutual Casualty Company (EMC), has a duty to defend the defendants against the claims asserted against the defendants in the Roeding Complaint;

5. That **Counterclaimant Accent Windows, Inc. Cross Motion for Summary Judgment** [#35] filed April 14, 2009, is **DENIED** otherwise;

6. That **Counterclaimant Marcovichs Cross Motion for Summary Judgment** [#37] filed April 15, 2009, is **DENIED** otherwise.

Dated August 19, 2009, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge